# United States Court of Appeals for the Federal Circuit

---

**MICROSOFT CORPORATION,**
**TALEO CORPORATION,**
*Plaintiffs*

**GOOGLE INC.,**
*Plaintiff-Appellee*

**v.**

**GEOTAG, INC.,**
*Defendant-Appellant*

---

2015-1140

---

Appeal from the United States District Court for the District of Delaware in No. 1:11-cv-00175-RGA, Judge Richard G. Andrews.

---

Decided: April 1, 2016

---

DARYL JOSEFFER, King & Spalding LLP, Washington, DC, argued for plaintiff-appellee. Also represented by PAUL ALESSIO MEZZINA; ADAM CONRAD, Charlotte, NC; ROBERT A. VAN NEST, ASIM BHANSALI, MATTHIAS A. KAMBER, Keker & Van Nest, LLP, San Francisco, CA.

JOEL WILSON REESE, Reese Gordon, Dallas, TX, argued for defendant-appellant. Also represented by ADAM COOPER SANDERSON, KENDAL CATHERINE SIMPSON.

---

Before LOURIE, WALLACH, and STOLL, *Circuit Judges.*

WALLACH, *Circuit Judge.*

Appellant GeoTag, Inc. ("GeoTag") appeals the decision of the United States District Court for the District of Delaware ("District Court") finding that it had subject matter jurisdiction over (1) Appellee Google Inc.'s ("Google") First Amended Complaint, which sought a declaratory judgment that U.S. Patent No. 5,930,474 ("the '474 patent") (J.A. 89–133) is invalid and not infringed by Google; and (2) GeoTag's counterclaims, which alleged that Google infringed the '474 patent. *See Microsoft Corp. v. GeoTag, Inc.*, No. 11-175-RGA, 2014 WL 4312167 (D. Del. Aug. 29, 2014). GeoTag also challenges the District Court's decision granting summary judgment that Google did not infringe the '474 patent. *See Microsoft Corp. v. GeoTag, Inc.*, No. 11-175-RGA (D. Del. Apr. 10, 2014) (J.A. 45–63). We affirm the District Court, although we find jurisdiction on different grounds.

BACKGROUND

I. The '474 Patent

The '474 patent claims systems and methods of searching online information within a geographically and topically organized database. '474 patent, Abstract. The specification describes a preferred embodiment that organizes websites and files within a directory-like structure of folders categorized by geography and topic. *Id.* col. 19 ll. 52–57; *see also id.* fig.10. In that embodiment, an Internet user may navigate to a folder labeled for a particular geographic area and then conduct a topical search within that area, such as for "information about specific

goods and services in the geographic location." *Id.*, Abstract. Independent claim 1 is illustrative and describes

> A system which associates on-line information with geographic areas, said system comprising:
>
>> a computer network wherein a plurality of computers have access to said network; and
>>
>> an organizer executing in said computer network, wherein said organizer is configured to receive search requests from any one of said plurality of computers, said organizer comprising:
>>
>>> a database of information organized into a hierarchy of geographical areas wherein entries corresponding to each one of said hierarchy of geographical areas is further organized into topics; and
>>>
>>> a search engine in communication with said database, said search engine configured to search geographically and topically, said search engine further configured to [s]elect one of said hierarchy of geographical areas prior to selection of a topic so as to provide a geographical search area wherein within said hierarchy of geographical areas at least one of said entries associated with a [broader] geographical area is *dynamically replicated* into at least o[n]e narrower geographical area, said search engine further configured to search said topics within said selected geographical search area.

*Id.* col. 38 ll. 36–58 (emphasis added to reflect disputed claim language).[1] Importantly, the "dynamically replicated" limitation occurs after the system conducts a search within a limited geographic area. *Id.* col. 38 ll. 47–58. Through that limitation, the system includes search results associated with the narrow geographic area and then automatically adds results associated with a broader geographic area. *Id.* col. 38 ll. 55–58.

## II. Procedural History

This appeal is an outgrowth of litigation that began in the United States District Court for the Eastern District of Texas in December 2010. In the Texas actions, "GeoTag sued more than 300 entities in ten separate complaints . . . based on store locator services used by the entities but, for some of the defendants, provided by Microsoft [Corporation ("Microsoft")] and Google."[2] *GeoTag*, 2014 WL 4312167, at *1 (citation omitted). GeoTag alleged in those actions that Google's customers infringed the '474 patent. *See, e.g.*, J.A. 5000.

"In response to GeoTag's suits [in Texas against Google's customers], Google . . . filed a declaratory judgment action against GeoTag" in the District Court. *GeoTag*, 2014 WL 4312167, at *1 (citation omitted). The Complaint sought a declaratory judgment that the '474

---

[1] In April 2002, the United States Patent and Trademark Office issued a certificate of correction that corrected certain errors in claim 1 of the '474 patent. J.A. 133. Those corrections are reflected in brackets in the passage quoting claim 1.

[2] All claims by and against Microsoft have been severed and dismissed by stipulation and, thus, are not part of this appeal. J.A. 7790.

patent "is invalid and is not infringed by the use of [Google's] web mapping services." J.A. 5192.

GeoTag answered Google's Complaint and counter-claimed that Google AdWords—an online platform for displaying advertisements to users that conduct a search on Google's website—directly infringes the '474 patent. *GeoTag*, 2014 WL 4312167, at \*1 (citation omitted); J.A. 5577–87 (GeoTag's Answer and Counterclaims). In relevant part, AdWords runs a search against its "entire database" of ads, "yield[ing] all possible results" that are then "progressively filtered[] using factors such as geography." J.A. 61; *see* J.A. 59–60 (providing a technical description of the AdWords system).

Google moved for summary judgment that it did not infringe independent claims 1, 20, and 31 ("the asserted independent claims") and dependent claims 3, 5, 9–15, 18–19, 24–25, 32, and 36–38 of the '474 patent, which the District Court granted. J.A. 57, 63.[3] The District Court held that AdWords does not practice the "dynamically replicated" limitation in claim 1 of the '474 patent because it does not search a narrow geographic area and automatically add results from a broader area; instead, it was "uncontested" that AdWords conducts a broad search for "all responsive ads" and then "consecutively filters" the results.[4] J.A. 60–61; *see* J.A. 61 ("Therefore, Google's

---

[3] The District Court issued its summary judgment decision under seal; however, GeoTag appended the decision to the public version of its opening brief and redacted only certain portions of the document, to which Google did not object. Appellant's App. 14–32. Accordingly, the non-redacted portions of the District Court's summary judgment decision are in the public domain.

[4] The District Court found that, because the asserted independent claims each require a form of dynamic

accused system does not trace up linkages in a hierarchy, or repeat the search in order to obtain results from a broader geographic area, as the claim limitation would require, and thus cannot meet the 'dynamic replication' requirement of the '474 [p]atent.")

Shortly before the District Court issued its summary judgment decision, this court addressed declaratory judgment relief in *Microsoft Corp. v. DataTern, Inc.*, 755 F.3d 899 (Fed. Cir. 2014). The District Court obtained additional briefing on *DataTern* from Google and GeoTag. J.A. 180–81 (oral order requesting additional briefing), 7103–06 (Google), 7791–93 (GeoTag). It subsequently permitted Google to file its First Amended Complaint. J.A. 7634–35 (Order), 7636–48 (First Amended Complaint).

GeoTag in turn filed a Motion to Dismiss the First Amended Complaint, asserting that the District Court lacked subject matter jurisdiction over the action. J.A. 7698–99. Specifically, GeoTag asserted that "[t]he minimal additional allegations" in the First Amended Complaint did not establish a substantial controversy between GeoTag and Google "of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *GeoTag*, 2014 WL 4312167, at *1–2 (internal quotation marks and citation omitted). GeoTag also alleged its counterclaims against Google "were compulsory, [not permissive,] and therefore should be dismissed if

---

replication, its "analysis applies equally to" each of those claims. J.A. 58 n.5. And because the District Court found that Google did not infringe any of the asserted independent claims, it held that "the dependent claims cannot, by definition, be infringed." J.A. 58 n.5 (citing *Muniauction, Inc. v. Thomson Corp.*, 532 F.3d 1318, 1328 n.5 (Fed. Cir. 2008)).

the declaratory judgment action lacks subject matter jurisdiction."[5] *Id.* at *3.

The District Court denied GeoTag's Motion, finding that Google's First Amended Complaint established a substantial controversy of sufficient immediacy to warrant declaratory relief and, thus, that it possessed subject matter jurisdiction over the action. *Id.* at *2–3. The District Court also held that, even if the First Amended Complaint did not establish sufficient grounds for declaratory relief, "there would still be an independent basis for subject matter jurisdiction over the counterclaims." *Id.* at *3 (footnote omitted). In reaching the conclusion that it possessed subject matter jurisdiction over GeoTag's counterclaims, the District Court found the counterclaims permissive, rather than compulsory, under Federal Circuit law and held that it retained subject matter jurisdiction over the counterclaims under Third Circuit law. *Id.* at *4 ("Whether I retain subject matter jurisdiction over a permissive counterclaim is a procedural issue to which Federal Circuit law does not apply." (citing *Woods v. DeAngelo Marine Exhaust, Inc.*, 692 F.3d 1272, 1279 (Fed. Cir. 2012)).

Following the denial of its Motion to Dismiss Google's First Amended Complaint, GeoTag stipulated to the entry of final judgment based on the District Court's summary

---

[5] Federal Rule of Civil Procedure 13 defines a "compulsory counterclaim" as a "claim that—at the time of its service—the pleader has against an opposing party" that "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim" and "does not require adding another party over whom the court cannot acquire jurisdiction." Fed. R. Civ. P. 13(a)(1)(A)–(B). A "permissive counterclaim" includes "any claim that is not compulsory." Fed. R. Civ. P. 13(b).

judgment ruling. J.A. 32–34. GeoTag timely appealed the District Court's final judgment. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1) (2006).[6]

DISCUSSION

I. Jurisdiction

A. Choice of Law

Before we address whether the District Court possessed subject matter jurisdiction over GeoTag's patent infringement counterclaims pursuant to 28 U.S.C. § 1338(a), we must first determine whether our law or that of the Third Circuit applies to the jurisdiction question. We find that the District Court erred in determining that Third Circuit law governs whether it had jurisdiction. *See GeoTag*, 2014 WL 4312167, at *4.

A "procedural question not unique to patent law" is governed by the law of the regional circuit. *See, e.g.*, *Madey v. Duke Univ.*, 307 F.3d 1351, 1358 (Fed. Cir. 2002). The denial of a motion to dismiss normally raises a procedural question not unique to patent law. *See, e.g.*, *Intel Corp. v. Commonwealth Sci. & Indus. Research Org.*, 455 F.3d 1364, 1369 (Fed. Cir. 2006). However, the motion to dismiss in this case requires the court to determine whether this dispute arises under 28 U.S.C.

---

[6]    In passing the Leahy-Smith America Invents Act ("AIA"), Congress amended 28 U.S.C. §§ 1295 and 1338. Pub. L. No. 112-29, § 19(a)–(b), 125 Stat. 284, 331–32 (2011). However, because those amendments apply only to civil actions commenced on or after September 16, 2011, the pre-AIA versions of 28 U.S.C. §§ 1295 and 1338 apply to this appeal. *See id.* § 19(e), 125 Stat. at 333; *see also* J.A. 5192 (Google's Complaint, which it filed on March 1, 2011).

§ 1338(a), for both Google's First Amended Complaint and GeoTag's counterclaims assert jurisdiction on the basis of that statute. J.A. 7638 (Google's First Amended Complaint), 5580 (GeoTag's Counterclaims).

Section 1338(a) states in relevant part that the District Court "shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents." 28 U.S.C. § 1338(a). Whether a civil action arises under an act of Congress related to patents necessarily presents an issue that is unique to patent law. *See Midwest Indus., Inc. v. Karavan Trailers, Inc.*, 175 F.3d 1356, 1359 (Fed. Cir. 1999) (en banc in relevant part) ("[A] procedural issue that is not itself a substantive patent law issue is nonetheless governed by Federal Circuit law if the issue pertains to patent law, . . . if it bears an essential relationship to matters committed to our exclusive control by statute, . . . or if it implicates the jurisprudential responsibilities of this court in a field within its exclusive jurisdiction." (internal quotation marks, brackets, and citations omitted)); *Mars Inc. v. Kabushiki-Kaisha Nippon Conlux*, 24 F.3d 1368, 1371 (Fed. Cir. 1994) ("The issue whether the district court had jurisdiction [under § 1338] to hear Mars' claim of Japanese patent infringement is of importance to the development of the patent law and is clearly a matter that falls within the exclusive subject matter responsibility of this court." (internal quotation marks and citations omitted)); *see also Helfgott & Karas, P.C. v. Dickinson*, 209 F.3d 1328, 1333–34 (Fed. Cir. 2000) (explaining that whether an action arises under the scope § 1338 presents a question that is unique to patent law). Therefore, Federal Circuit law applies to the jurisdiction question in this appeal.

B. The District Court Retained Subject Matter Jurisdiction over GeoTag's Patent Infringement Counterclaims Pursuant to 28 U.S.C. § 1338(a)

"This court reviews a grant or denial of a motion to dismiss for lack of subject matter jurisdiction de novo." *Hewlett-Packard Co. v. Acceleron LLC*, 587 F.3d 1358, 1361 (Fed. Cir. 2009) (citation omitted). We review factual findings underlying the jurisdiction determination for clear error. *See SanDisk Corp. v. STMicroelecs., Inc.*, 480 F.3d 1372, 1377 (Fed. Cir. 2007).

GeoTag principally argues that the District Court lacked subject matter jurisdiction over Google's First Amended Complaint, which seeks a declaratory judgment that the '474 patent is invalid and not infringed by Google. Appellant's Br. 20–40. If the District Court lacks such jurisdiction, GeoTag continues, then it also lacks jurisdiction over GeoTag's patent infringement counterclaims. *Id.* at 21. GeoTag therefore argues that the District Court's "judgment should be vacated." *Id.* at 20.

With respect to its patent infringement counterclaims, GeoTag alleges that they "cannot serve as an independent basis for jurisdiction." Appellant's Br. 34. However, where a complaint and a counterclaim both raise issues arising under federal patent law, the district court may retain subject matter jurisdiction over the counterclaim pursuant to 28 U.S.C. § 1338(a), even if the district court later dismisses or finds a defect in the complaint that raises a question arising under federal patent law.[7] *See*

---

[7] We similarly possess subject matter jurisdiction pursuant to 28 U.S.C. § 1295(a)(1) over counterclaims accompanied by a complaint raising a question arising under federal patent law, for "the Federal Circuit's jurisdiction is fixed with reference to that of the district court,

*Holmes Group*, 535 U.S. at 833–34 & n.4, *superseded by statute*, AIA § 19(a)–(b), 125 Stat. at 331–32.[8]  Indeed, *Holmes Group* expressly distinguished cases like the instant appeal where both the complaint and counterclaims raise issues arising under federal patent law from those cases where only the counterclaims do so.  *See* 535 U.S. at 834 n.4.

The District Court retained subject matter jurisdiction over GeoTag's patent infringement counterclaims pursuant to § 1338(a), such that we need not determine whether the District Court properly found that it had jurisdiction over Google's First Amended Complaint. GeoTag's counterclaims charged Google with infringement of the '474 patent and sought money damages for infringement.  J.A. 5583–86.  Accordingly, GeoTag's counterclaim arose under an "Act of Congress relating to

---

and turns on whether the action arises under federal patent law." *Holmes Grp., Inc. v. Vornado Air Circulation Sys., Inc.*, 535 U.S. 826, 829 (2002) (footnote omitted).

[8]  GeoTag asserts that *Holmes Group* ushered in a change in law that precludes federal courts from looking to counterclaims to determine jurisdiction.  Appellant's Br. 36.  GeoTag's argument reflects an overly broad reading of *Holmes Group*.  In that decision, the Supreme Court addressed whether counterclaims can provide jurisdiction over a complaint that does not raise a question arising under federal patent law.  535 U.S. at 831–32. The Supreme Court applied the well-pleaded complaint rule to determine that they could not.  *Id.*  Here, the well-pleaded complaint rule is satisfied because Google's First Amended Complaint unquestionably raises issues arising under federal patent law—i.e., whether the '474 patent is invalid and not infringed by Google.  J.A. 7636–48.

patents," 28 U.S.C. § 1338(a), and so the District Court retained jurisdiction over those claims, irrespective of any dismissal or defect in Google's First Amended Complaint. Further, as GeoTag "actually charged [Google] with infringement of the patent, there is, *necessarily,* a case or controversy adequate to support jurisdiction" under Article III. *See Cardinal Chem. Co. v. Morton Int'l, Inc.*, 508 U.S. 83, 96 (1993). Thus, even assuming that the First Amended Complaint was dismissed or deficient in some respect, the District Court retained subject matter jurisdiction over GeoTag's patent infringement counterclaims.

GeoTag's other arguments do not require us to find that the District Court lacked subject matter jurisdiction. Specifically, GeoTag contends that the District Court's decision would "effectively reverse *DataTern*" by allowing a counterclaim to "retroactively establish[] jurisdiction" over a declaratory judgment complaint. Appellant's Br. 35. *DataTern* is inapposite. In that decision, we held that conditional counterclaims could not establish jurisdiction to address the claims in a declaratory judgment complaint. 755 F.3d at 906. We did not consider the distinct question of whether a district court could retain subject matter jurisdiction over a counterclaim if a complaint is dismissed or deemed defective. *See generally id.*

Finally, GeoTag challenges the District Court's finding that its counterclaims are permissive. In particular, GeoTag alleges that, "[e]ven if a permissi[ve] counterclaim could create jurisdiction, it makes no difference because GeoTag's counterclaims were compulsory." Appellant's Br. 38 (discussing *GeoTag*, 2014 WL 4312167, at *3–4; *see id.* at 38–40 (arguing that GeoTag's counterclaims were compulsory). Because its counterclaims are compulsory, GeoTag continues, the District Court could not retain subject matter jurisdiction over its patent infringement counterclaims. *See id.* at 38.

The District Court and GeoTag offer a distinction based on counterclaim status that has no bearing on the question of jurisdiction under 28 U.S.C. § 1338. We have not addressed whether a counterclaim's permissive or compulsory status is relevant to retaining jurisdiction under 28 U.S.C. § 1338. However, nothing in the text of section 1338 suggests that Congress conditioned its grant of jurisdiction to the District Court on the compulsory or permissive nature of the counterclaim. 28 U.S.C. § 1338(a). Nor would the distinction make sense in disputes before the District Court, which has "original jurisdiction of *any* civil action," § 1338(a) (emphasis added), regardless of the counterclaim status, Fed. R. Civ. P. 13(a)–(b) (permitting parties to file compulsory *and* permissive counterclaims before the District Court).

## II. The District Court Properly Granted Summary Judgment

The review of a grant of summary judgment involves an issue not unique to patent law, so we look to the law of the regional circuit in which the district court sits. *Classen Immunotherapies, Inc. v. Elan Pharm., Inc.*, 786 F.3d 892, 896 (Fed. Cir. 2015). In the Third Circuit, the court reviews the grant of summary judgment de novo. *See Al–Sharif v. U.S. Citizenship & Immigration Servs.*, 734 F.3d 207, 210 n.2 (3d Cir. 2013) (en banc). The Third Circuit affirms the grant of summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Gonzalez v. Sec'y of Dep't of Homeland Sec.*, 678 F.3d 254, 261 (3d Cir. 2012) (quoting Fed. R. Civ. P. 56(a)). A genuine dispute over a material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

"[O]n appeal from a grant of summary judgment of noninfringement, we must determine whether . . . the district court correctly concluded that no reasonable jury could find [literal] infringement" or infringement under the doctrine of equivalents. *Crown Packaging Tech., Inc. v. Rexam Beverage Can Co.*, 559 F.3d 1308, 1312 (Fed. Cir. 2009) (internal quotation marks and citation omitted). "To establish literal infringement, every limitation set forth in a claim must be found in an accused product, exactly," *Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1575 (Fed. Cir. 1995) (citation omitted), whereas under the doctrine of equivalents infringement occurs when "there is equivalence between the elements of the accused product . . . and the claimed elements of the patented invention," *Duramed Pharm., Inc. v. Paddock Labs., Inc.*, 644 F.3d 1376, 1380 (Fed. Cir. 2011) (internal quotation marks and citation omitted).

### A. The District Court Properly Held that Google's Ad-Words Does Not Infringe the '474 Patent

GeoTag's infringement allegations principally concern the "dynamically replicated" limitation in claim 1 of the '474 patent. As previously mentioned, the "dynamically replicated" limitation occurs after the system conducts a search within a limited geographic area. '474 patent col. 38 ll. 36–58. Through that limitation, the system includes search results associated with the narrow geographic area and then automatically adds results associated with a broader geographic area. *Id.*

GeoTag alleges that the District Court erred in granting summary judgment that Google did not infringe the '474 patent. Specifically, GeoTag argues that (1) "the [D]istrict [C]ourt erroneously added new limitations, including that dynamic replication requires at least two searches and that one of those searches must be inherited into the other search," Appellant's Br. 60, and (2) "Google's AdWords System practices dynamic replication,"

*id.* at 64. It also contends that the District Court "wrongly substituted itself for the jury by finding that 'filtering' is not a search." *Id.* at 68.

The District Court properly granted summary judgment. AdWords searches its "entire database" of ads without geographic limitation, identifies "all possible results" independent of geographic restrictions, and then "consecutively filters" those results by, among other things, eliminating results not associated with the targeted geographic areas. J.A. 61. Because AdWords searches its entire database without regard to geography and then filters the results, rather than searches only within a targeted geographic area and automatically adds results from outside that area in the manner claimed by the '474 patent, AdWords does not practice "dynamic replication" under any construction of that limitation. J.A. 60–62. Indeed, AdWords's performance of a broad search of all possible ads, without regard to geography, means that it has no need or opportunity to "dynamically replicat[e]" entries from a broader geographic area into a narrower one, as the '474 patent claims. J.A. 58 n.5. Thus, no reasonable jury could find that AdWords infringes the '474 patent.

GeoTag's arguments do not warrant a different conclusion. GeoTag first contends that the District Court added a new limitation by requiring dynamic replication to be implemented through multiple searches. Appellant's Br. 60–64. The District Court made no such holding. The '474 patent's claims require both a search and a dynamic replication at the time of the search. '474 patent col. 38 ll. 47–58. The District Court required some action in AdWords—apart from its broad search of its entire database of ads—that could qualify as dynamic replication and found none. J.A. 61 ("Google's accused system does not trace up linkages in a hierarchy, *or* repeat the search in order to obtain results from a broader geographic area." (emphasis added)).

Similarly, GeoTag argues that the District Court erred in assuming that filtering is not a search. Appellant's Br. 68–72. That argument incorrectly assumes that the District Court required a second search. It did not. J.A. 60–62. Moreover, AdWords's progressive filtering of the results of its search could not qualify as dynamic replication because that filtering eliminates ads from the search results, rather than adds to them as dynamic replication requires under the '474 patent. J.A. 61.

GeoTag next asserts that AdWords practices dynamic replication when it "filters adgroups by those not being geo-targeted, campaigns with adgroups associated with a broader geographical area . . . are dynamically replicated . . . into the search area at the location of the user." Appellant's Br. 71; *see also* J.A. 61 (where GeoTag presented the same argument to the District Court). The District Court properly rejected that argument as looking "only to the result of Google's accused system and not its method." J.A. 61. To infringe, AdWords would have to produce results by performing all of the claim limitations, including dynamically replicating ads associated with broader areas into the results for narrower areas. *See Duramed Pharm.*, 644 F.3d at 1380 (discussing infringement under the doctrine of equivalents); *Southwall Techs.*, 54 F.3d at 1575 (discussing literal infringement). Merely producing that same result in a different way does not suffice. *See Augme Techs., Inc. v. Yahoo! Inc.*, 755 F.3d 1326, 1336 (Fed. Cir. 2014).

Finally, GeoTag asserts that "there is nothing in the ['474] patent that would exclude the practice of dynamic replication through the use of a single search aimed at gathering entries associated with both narrower and broader geographical areas." Appellant's Br. 64. As an initial matter, the absence of evidence supporting a particular fact does not equate to affirmative evidence of a genuine dispute as to a material fact, such that a grant of summary judgment is improper. *Cf. Zenith Elecs. Corp. v.*

*PDI Commc'n Sys., Inc.*, 522 F.3d 1348, 1363 (Fed. Cir. 2008). In any event, GeoTag's argument would read the dynamic replication limitation out of the '474 patent's claims and expand the scope of the claims to cover virtually every instance of searching within a geographically organized database. We decline to adopt that construction.

### B. GeoTag's Claim Construction Arguments Are Inapposite

GeoTag alleges that the District Court erred in its construction of the asserted independent claims of the '474 patent. Specifically, GeoTag alleges that, when the District Court construed "hierarchy of geographic areas" to mean "interrelated geographic areas such that there are parent geographic areas and child geographic areas," it improperly imported a parent-child limitation into the asserted independent claims. Appellant's Br. 43–53. It also argues that, when the District Court construed the "dynamically replicated" limitation to mean "automatically inheriting at the time of a search," it improperly imported a parent-child limitation into the asserted independent claims from the specification and should have substituted "copying or inheriting" for "inheriting." *Id.* at 53–59.

Even if correct, these arguments do not warrant reversal of the District Court. As to "hierarchy of geographic areas," the District Court's construction of that phrase played no role in its grant of summary judgment. Instead, the District Court relied solely on certain uncontested aspects of dynamic replication in granting summary judgment. J.A. 58 ("The Court finds that the accused Google product does not infringe the 'dynamic replication' requirement of the patent claims and therefore will focus the remainder of this section on this limitation alone." (footnote omitted)). Because "the construction of this term did not form the basis for any judgment of

non-infringement by the [D]istrict [C]ourt," it "is irrelevant to the judgment that is on appeal" and will not be addressed. *Advanced Cardiovascular Sys., Inc. v. Scimed Life Sys., Inc.*, 261 F.3d 1329, 1334 n.2 (Fed. Cir. 2001) (citation omitted).

Similarly, the contested aspects of the District Court's construction of the "dynamically replicated" limitation did not impact its grant of summary judgment. The District Court observed that

> for the independent claims to be infringed[,] the accused device must conduct "dynamic replication." This limitation requires that the accused system "automatically inherit[s] at the time of the search" from one search to another search. Each of the three independent claims requires that this inheritance occur from a larger search area to a smaller search area, though the smaller search area is not necessarily a subset of the larger search area. . . . However, as the Google system performs only a single search and then simply filters the results, it is not possible for a second search to inherit from the first search, as there is no second search. Furthermore, as the AdWords System does not repeat the search, there can be no larger or smaller search area.

J.A. 61–62. The District Court did not base its summary judgment grant on any parent-child limitation in the "dynamically replicated" limitation, nor did it find that how dynamic replication occurred (i.e., whether through inheritance or copying) answered the infringement question. Instead, it found that Google's AdWords does not practice "dynamic replication" under any construction of that phrase. J.A. 60–61. Thus, because the disputed construction did not form the basis of the District Court's summary judgment grant, we will not address it. *See Advanced Cardiovascular Sys.*, 261 F.3d at 1334 n.2.

CONCLUSION

We have considered GeoTag's remaining arguments and find them unpersuasive. Accordingly, the decision of the United States District Court for the District of Delaware is

**AFFIRMED**