NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**TMC FUEL INJECTION SYSTEM, LLC,**
*Plaintiff-Appellant*

**v.**

**FORD MOTOR COMPANY,**
*Defendant-Appellee*

---

2016-2122

---

Appeal from the United States District Court for the Eastern District of Pennsylvania in No. 2:12-cv-04971-NS, Senior Judge Norma L. Shapiro.

---

Decided: March 27, 2017

---

JOHN F. WARD, Kelley Drye & Warren, LLP, New York, NY, argued for plaintiff-appellant. Also represented by DAVID LINDENBAUM.

EUGENE ALEXIS SOKOLOFF, Hogan Lovells US LLP, Washington, DC, argued for defendant-appellee. Also represented by JESSICA LYNN ELLSWORTH; FRANK A. ANGILERI, MARC LORELLI, Brooks Kushman PC, Southfield, MI.

---

Before PROST, *Chief Judge,* WALLACH and STOLL, *Circuit Judges.*

PROST, *Chief Judge.*

TMC Fuel Injection System, LLC ("TMC") appeals the U.S. District Court for the Eastern District of Pennsylvania's grant of summary judgment of noninfringement. The district court based its decision on an application of prosecution history disclaimer. We affirm.

BACKGROUND

TMC filed this infringement suit against Ford Motor Co. ("Ford") in 2012, alleging that fuel injection systems in Ford's vehicles infringe claims 38 and 40 ("the asserted claims") of U.S. Patent No. 7,318,414 ("'414 patent").

I

The '414 patent relates to a fuel injection system for supplying fuel to engines, such as in automobiles. '414 patent col. 1 ll. 7–8. Pressurized fuel is generally delivered from a fuel tank to fuel injectors, along a main fuel supply line, by the action of a fuel pump. *Id.* at col. 2 ll. 12–16. The fuel injectors spray fuel mist into the engine, and when that fuel is ignited by sparkplugs, it combusts and powers the engine. *Id.* at col. 2 ll. 15–20. Prior art fuel injection systems would return excess fuel to the fuel tank whenever the engine used less fuel (such as when an automobile was idling). *Id.* at col. 3 ll. 54–57. But that fuel would be heated by the warmth of the engine before returning to the fuel tank, which was not desirable. *Id.* at col. 4 ll. 57–60, col. 5 ll. 16–22. Another problem with the prior art was that there was a lag in response time when trying to adjust the amount of fuel delivered based on the amount of fuel required by the engine. *Id.* at col. 3 ll. 45–47.

By using components that allow the fuel system to switch quickly between two different pressure levels, the '414 patent discloses "the capability to instantly increase fuel supply to an engine on-demand instead of waiting for the system to stabilize . . . [and to] deliver[] much less fuel to keep the engine running when idle to save fuel." *Id.* at col. 4 ll. 1–5; *see also id.* at col. 6 l. 59–col. 7 l. 7. The asserted claims have preambles that describe the use of a fuel recirculation loop "to *minimize* [*or eliminate*] the need of a hot fuel return line and a low pressure regulator."[1] *Id.* at col. 17 ll. 15–18, 46–48 (emphasis added). Both asserted claims also recite, among other limitations, a "fuel return path" with a "flow constraint" for stabilizing fuel pressure. *Id.* at col. 17 ll. 28–33, 58–65.

## II

While the underlying case was pending, Ford successfully petitioned the Patent Trial and Appeal Board ("Board") for inter partes review ("IPR") of the asserted claims. The district court stayed the litigation, including a then-pending motion for summary judgment of noninfringement, until the resolution of the IPR proceedings.

In a consolidated final written decision the Board held that Ford had not carried its burden of showing that the asserted claims are unpatentable as anticipated or obvious. The Board concluded, in relevant part, that several of the asserted prior art references failed to disclose a fuel return path with "flow constraint" because those references used pressure regulators, whereas "the prosecution history states an express disclaimer of pressure regulators" from the '414 patent's "flow constraint" limitation.

---

[1]    Asserted claim 38 recites "minimize or eliminate," whereas asserted claim 40 only recites "minimize." Besides noting this difference, TMC does not distinguish between the asserted claims on appeal.

J.A. 1875 (internal quotation marks omitted). The district court then invited the parties to supplement their briefing on Ford's summary judgment motion in view of the Board's IPR decision.

The district court's summary judgment decision followed in the Board's footsteps. The court held that during prosecution, "TMC repeatedly, unequivocally stated its system does not use a pressure regulator and distinguished its invention from prior art using a pressure regulator." *TMC Fuel Injection Sys., LLC v. Ford Motor Co.*, No. 12-4971, 2016 WL 7155793, at *3 (E.D. Pa. Apr. 20, 2016). Although Ford had pressed the prosecution disclaimer theory without success before in the litigation, the court explained that it had not previously considered the prosecution history. *Id.*

The district court therefore amended its claim construction "to exclude pressure regulators of any type from the system." *Id.* It also granted summary judgment of noninfringement because the parties did not dispute that Ford's accused systems included a pressure regulator. *Id.* TMC appealed. We have jurisdiction under 28 U.S.C. § 1295(a)(1).

DISCUSSION

The only issue on appeal is whether the prosecution history of the '414 patent demonstrates that all pressure regulators were disclaimed from the fuel systems of the asserted claims. There is no dispute that if such broad prosecution disclaimer attaches, then Ford would not infringe the asserted claims.

Prosecution history disclaimer applies when a patentee makes statements during prosecution that would cause "a competitor [to] reasonably conclude that the applicant clearly and unmistakably limited" the scope of its claims. *Uship Intellectual Props., LLC v. United States*, 714 F.3d 1311, 1316 (Fed. Cir. 2013). "[T]he doctrine of prosecution

disclaimer attaches and narrows the ordinary meaning of the claim congruent with the scope of the surrender." *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1324 (Fed. Cir. 2003). In reviewing a grant of summary judgment, we look to the law of the regional circuit, and the Third Circuit applies de novo review. *Microsoft Corp. v. GeoTag, Inc.*, 817 F.3d 1305, 1313 (Fed. Cir. 2016) (citing Third Circuit law). We also review de novo a claim construction that is based, as it is here, on the intrinsic evidence. *Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 841–42 (2015).

The parties do not dispute that the claimed "flow constraint," which provides fixed resistance, excludes the use of a "pressure regulator," which provides variable resistance. Rather, they dispute whether during prosecution TMC disclaimed pressure regulators more broadly—from the fuel system as a whole, and not just from the flow constraint portion. TMC argues that any disclaimer of pressure regulators was limited to the system's flow constraint, while Ford contends that there was a categorical disclaimer of pressure regulators from the entire system.

TMC supports its position with statements that the Board made in its IPR decision.[2] But as TMC acknowl-

---

[2] To be sure, we disagree with TMC's contention that the Board only found a disclaimer of pressure regulators from the flow constraint. The Board did not so cabin its discussion. It "conclude[d] that the prosecution history states an express disclaimer of 'pressure regulators and incremental regulation means *of any type from the system*'" and then "applie[d]" this disclaimer to the flow constraint limitation. J.A. 1785 (emphasis added) (quoting the prosecution history). One of the administrative patent judges wrote separately to address an argument that was raised during the oral hearing in the IPR.

edges, "[w]hether prosecution history disclaimer applies is a legal question this court reviews de novo." *Ecolab, Inc. v. FMC Corp.*, 569 F.3d 1335, 1342 (Fed. Cir. 2009); *see* Appellant's Opening Br. 22 (same); Oral Argument 4:44–5:56, *available at* http://oralarguments.cafc.uscourts.gov/mp3/2016-2122.mp3 (same). Accordingly, that is the standard we apply here.[3]

We turn, instead, to the prosecution history of the '414 patent. During prosecution, the examiner issued a final rejection of all pending claims, after which TMC filed a response stating that the claimed "invention takes a completely different approach" from prior art fuel systems, J.A. 327, and that "[t]he Application does not use [a] pressure regulator or pressure relief valve," J.A. 336. The examiner again rejected all of the pending claims—including claims with the preamble language about "minimiz[ing]" the need for pressure regulators—in an advisory action. On appeal to the then-existing Board of Patent Appeals and Interferences ("BPAI"), TMC distinguished the prior art by reiterating that the claimed "invention is not directed to pressure regulators. . . . In this case, every cited reference has at least one pressure regulator." J.A. 533. TMC further stated, in no uncertain terms, that the claimed invention "*eliminate*[*es*] *pressure regulators* and incremental regulation means *of any type from the system*," and explained that "no regulator of any kind is used by the Appellant in the system nor needs to be used at anytime." J.A. 502 (emphases added). It made this express disavowal repeatedly in its BPAI appeal brief. *See, e.g.*, J.A. 545 ("Appellant's system does not use

---

[3]    TMC attempts to discount the Board's IPR decision by trying to raise a due process defect. Because we are not reviewing that decision here, we do not reach that issue.

pressure regulators."); J.A. 546 ("The Appellant's system does not use pressure regulator [sic], but depends on the recirculation loop and flow constraint element to obtain pressure at the pre-set level."); J.A. 548 ("[TMC's] teaching does not use any pressure regulator or pressure regulating element."). Persuaded by these arguments, the examiner withdrew his rejections.

TMC's prosecution statements, particularly the ones made during the BPAI appeal, unequivocally disavow the use of pressure regulators from the entire fuel system. TMC made those statements to traverse the examiner's rejections, and the examiner withdrew his rejections directly in response to the representation in TMC's BPAI appeal brief. It is immaterial whether or not TMC needed to make such a broad disclaimer in order to traverse the prior art because "the scope of surrender is not limited to what is absolutely necessary to avoid a prior art reference; patentees may surrender more than necessary." *Tech. Props. Ltd. v. Huawei Techs. Co.*, – F.3d –, 2017 WL 836597, at *6 (Fed. Cir. Mar. 3, 2017). "When this happens, we hold patentees to the actual arguments made, not the arguments that could have been made." *Id.*

TMC submits that the claim language of the '414 patent demonstrates that any disclaimer was limited because the claims themselves clearly contemplate the presence of pressure regulators in a fuel system. It points to the preambles of the asserted claims, which provide the option of "minimiz[ing]," rather than necessarily eliminating, the use of pressure regulators. Appellant's Opening Br. 26. It also points to several unasserted claims of the '414 patent that allegedly reference the possibility of including a pressure regulator. But the language of those claims does not affect the scope of the prosecution disclaimer in this case. TMC's statements in the prosecution history clearly and unmistakably disavowed pressure regulators from the claimed systems. "[T]he doctrine of prosecution disclaimer attaches and narrows the ordinary

meaning of the claim congruent with the scope of the surrender." *Omega Eng'g*, 334 F.3d at 1324. Therefore, even if there is claim language that might have otherwise left open the option of using pressure regulators in the claimed fuel systems, TMC's statements during prosecution definitively closed that door. This is precisely the point of prosecution disclaimer.

In the alternative, TMC argues that any disclaimer of pressure regulators only applies to a particular type of pressure regulator—a three-port valve—based on how pressure regulators were purportedly defined during prosecution. Having reviewed the prosecution history, we decline to limit the type of pressure regulator disclaimed. TMC relies on a single statement from the prosecution history that refers to three-port valves, but that statement was made before the numerous categorical disavowals made during the BPAI appeal. As noted above, the '414 patent claims were eventually allowed after a disavowal of pressure regulators "*of any type* from the system." J.A. 502 (emphasis added); *see also id.* ("[N]o regulator of any kind is used by the Applicant in the system nor needs to be used at anytime."). This disavowal was unambiguous and was not directed to any particular type of valve.

Therefore, on the basis of prosecution disclaimer, the asserted claims exclude the use of any pressure regulator from the fuel system.

CONCLUSION

There is no dispute that Ford's accused products cannot infringe in light of our determination of prosecution disclaimer. Accordingly, the district court's grant of summary judgment of noninfringement is affirmed.

**AFFIRMED**