# United States Court of Appeals for the Federal Circuit

———————————

**ARCELORMITTAL, ARCELORMITTAL ATLANTIQUE ET LORRAINE,**
*Plaintiffs-Appellants*

**v.**

**AK STEEL CORPORATION, SEVERSTAL DEARBORN, INC., WHEELING-NISSHIN INC.,**
*Defendants-Appellees*

———————————

2016-1357

———————————

Appeal from the United States District Court for the District of Delaware in No. 1:10-cv-00050-SLR, Judge Sue L. Robinson.

———————————

Decided: May 16, 2017

———————————

CONSTANTINE L. TRELA, JR., Sidley Austin LLP, Chicago, IL, argued for plaintiffs-appellants. Also represented by BRYAN C. MULDER; JEFFREY B. BOVE, Ratner Prestia, Wilmington, DE.

CHRISTOPHER NEIL SIPES, Covington & Burling LLP, Washington, DC, argued for defendants-appellants. Also represented by JEFFREY HOWARD LERNER, RODERICK R. MCKELVIE.

———————————

Before MOORE, WALLACH, and HUGHES, *Circuit Judges.*

Opinion for the court filed by *Circuit Judge* HUGHES.

Dissenting opinion filed by *Circuit Judge* WALLACH.

HUGHES, *Circuit Judge.*

Plaintiffs sued Defendants in 2010 for infringing U.S. Patent No. 6,296,805. After our most recent remand in this case, the district court invalidated claims 24 and 25 of U.S. Patent No. RE44,153, the reissue of the '805 patent. We conclude that the district court possessed subject matter jurisdiction when it granted summary judgment, that the court properly followed our most recent mandate, and that the court properly exercised its discretion to deny ArcelorMittal's Rule 56(d) request. Accordingly, we affirm.

I

A

The dispute between Plaintiffs (collectively, ArcelorMittal) and Defendants (Civ. No. 10-050-SLR (the 050 case)) began in January 2010, when ArcelorMittal first filed a complaint in the United States District Court for the District of Delaware alleging that Defendants infringed the '805 patent. Defendants counterclaimed for declarations of non-infringement and invalidity of the '805 patent. After a five-day trial, a jury found that Defendants did not infringe the then-asserted claims, and that the claims were invalid as anticipated and obvious.

In November 2012, we reversed the district court's claim construction in part and concluded that, as a matter of law, the claims were not anticipated. *ArcelorMittal France v. AK Steel Corp.*, 700 F.3d 1314, 1317 (Fed. Cir. 2012) (*ArcelorMittal I*). We then remanded for limited proceedings to address only literal infringement and commercial success. *Id.* at 1326.

Thereafter, in April 2013, the United States Patent & Trademark Office (PTO) reissued the '805 patent as the RE'153 patent. ArcelorMittal subsequently filed two patent infringement suits in the United States District Court for the District of Delaware against the defendants based on events occurring after the RE'153's issuance that allegedly infringed the RE'153 patent: (1) Civ. No. 13-685-SLR, against AK Steel (the 685 case); and (2) Civ. No. 13-686-SLR, against Severstal Dearborn and Wheeling-Nisshin (the 686 case). The following month, ArcelorMittal moved to amend its complaint in the 050 case to substitute allegations of infringement of the RE'153 patent for the allegations of infringement of the surrendered '805 patent. Defendants moved in June 2013 for summary judgment on the grounds that claims 1–23 of the RE'153 patent were improperly broadened, and thus invalid.

The district court concluded that summary judgment was warranted because claims 1–23 had been improperly broadened, and denied the pending motion to amend the complaint as moot. ArcelorMittal filed a letter seeking to clarify the status of claims 24 and 25, claiming that they were not asserted in the 050 case. In an order governing the 050, 685, and 686 cases, the district court clarified that it was invalidating not just RE'153 claims 1–23, but also claims 24 and 25.

ArcelorMittal appealed. We affirmed the invalidity of claims 1–23 of the RE'153 patent, but reversed as to the invalidity of claims 24 and 25 after finding those claims were not broadened on reissue. *ArcelorMittal France v. AK Steel Corp.*, 786 F.3d 885, 892 (Fed. Cir. 2015) (*ArcelorMittal II*). We remanded for "further proceedings consistent with [that] opinion and our mandate in *ArcelorMittal I*." *Id.*

B

In July 2015, on remand in the 685 case, ArcelorMittal moved to amend its complaint to substitute allegations of infringement of U.S. Patent No. RE44,940—a continuation of the application resulting in the RE'153 patent—for the allegations of infringement of the RE'153 patent.

Two months later, in the 050 case, ArcelorMittal moved to dismiss for lack of jurisdiction because, according to ArcelorMittal, claims 24 and 25 of the RE'153 patent—the only claims not invalidated—were not part of the case on remand. In its supporting brief, ArcelorMittal contended that, based on pretrial elections made with respect to the '805 patent, it had only asserted five claims of the RE'153 patent, all of which had been invalidated in *ArcelorMittal II*. It also said that it was prepared to issue Defendants a covenant not to sue. The same day, Defendants moved for summary judgment of non-infringement and invalidity of claims 24 and 25 of the RE'153 patent. Briefing on both motions completed on October 23, 2015. To its reply brief in support of its motion to dismiss, ArcelorMittal attached an unsigned draft covenant not to sue.

Four days later, the district court held a telephonic hearing on the pending motions. More than three weeks after the hearing, ArcelorMittal submitted to the court a letter attaching an executed covenant not to sue Defendants and their customers under the RE'153 patent. Although the covenant was facially unconditional, ArcelorMittal said in its enclosing letter that it was "tender[ing] the covenant conditioned on resolution of its motion to amend (D.I. 31) in the 685 case." J.A. 5218. ArcelorMittal further explained that it imposed that condition to "avoid mooting the 685 case" by "divesting the [c]ourt of jurisdiction" and that it stood "ready to deliver the covenant unconditionally upon resolution of" the motion to amend. *Id.*

In one order, the trial court granted Defendants' motion for summary judgment, denied ArcelorMittal's motion to dismiss for lack of subject matter jurisdiction in the 050 case, and granted ArcelorMittal's motion to amend its complaint in the 685 case. ArcelorMittal appeals the denial of its motion to dismiss for lack of subject matter jurisdiction and the grant of summary judgment of invalidity of RE'153 claims 24 and 25. We have jurisdiction under 28 U.S.C. § 1295(a)(1).

## II

We review the court's denial of a motion to dismiss for lack of subject matter jurisdiction de novo and the underlying factual findings for clear error. *Hewlett-Packard Co. v. Acceleron LLC*, 587 F.3d 1358, 1361 (Fed. Cir. 2009). Under *MedImmune, Inc. v. Genentech, Inc.*, courts may hear declaratory judgment actions if "the facts alleged, under *all the circumstances*, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality." 549 U.S. 118, 127 (2007) (quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)) (emphasis added).

## A

ArcelorMittal first argues that it never asserted RE'153 claims 24 and 25 in the 050 litigation against Defendants. We disagree. After the first remand, AK Steel moved for summary judgment of non-infringement of claims 1–23 of the RE'153 patent. In its supporting brief, AK Steel expressed its view that the court's grant of the motion "would leave claims 24–25 of the [RE'153] patent for the limited determination on obviousness remanded by the Federal Circuit." J.A. 4540. Though ArcelorMittal opposed the motion for other reasons, it did not dispute AK Steel's statement that claims 24 and 25 would remain for the court's further resolution. Then, in the second appeal, ArcelorMittal (1) argued that, "even if only reissue claims 24 and 25 remain, there is evidence

that those claims were infringed during the time period at issue in the 050 case," and (2) asked us to "remand the 050 case so that the district court can address infringement of reissue claims 24 and 25" even if we affirmed the invalidity of claims 1–23. J.A. 5199–5200. We granted ArcelorMittal that relief by "remand[ing] for further proceedings" because we declined "to reach the merits" on claims 24 and 25, which we held were improperly invalidated. *ArcelorMittal II*, 786 F.3d at 892.

ArcelorMittal now argues that we remanded the 050 case in *ArcelorMittal II* so that ArcelorMittal could *consider* whether to assert claims 24 and 25, which it says the district court introduced into the case by invalidating them sua sponte. We find that ArcelorMittal's statements to this court and its tacit acceptance of Defendants' representations about the litigation status of claims 24 and 25 reflect ArcelorMittal's continued attempt to assert those claims in the 050 case. Also, our mandate contemplated "further proceedings" in the 050 case, which were necessary only because ArcelorMittal told us that it was asserting RE'153 claims 24 and 25. In light of "all the circumstances," there was a substantial controversy between the parties over RE'153 claims 24 and 25. *See MedImmune*, 549 U.S. at 127. Therefore, the district court correctly considered RE'153 claims 24 and 25 to be asserted on remand.

B

Next, ArcelorMittal argues that its dispute with Defendants became moot when ArcelorMittal conditionally tendered its covenant to Defendants. We hold that it did not.

Defendants' counterclaims arise under the Declaratory Judgment Act, which states that, "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declara-

tion." 28 U.S.C. § 2201. Because "the phrase 'case of actual controversy' in the [Declaratory Judgment] Act refers to the type of 'Cases' and 'Controversies' that are justiciable under Article III," these requirements are coextensive. *MedImmune*, 549 U.S. at 127 (citing *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240 (1937)); *see also Prasco, LLC v. Medicis Pharm. Corp.*, 537 F.3d 1329, 1335 (Fed. Cir. 2008) ("[A]s long as the suit meets the case or controversy requirement of Article III, a district court may have jurisdiction over a declaratory judgment action."). Accordingly, we may either employ the *MedImmune* standard or draw from the "specific but overlapping doctrines rooted in the same Article III inquiry," including "lack of mootness." *Prasco,* 537 F.3d at 1336. Thus, the mootness doctrine may serve as a "helpful guide in applying the all-the-circumstances test." *Id.*; *see Sandoz Inc. v. Amgen Inc.*, 773 F.3d 1274, 1278 (Fed. Cir. 2014). Yet we remain mindful that "there is no bright-line rule for determining whether an action satisfies the case or controversy requirement," *Prasco*, 537 F.3d at 1336, and that "*MedImmune* makes clear . . . that 'all the circumstances' must be considered when making a justiciability determination," *Cat Tech LLC v. TubeMaster, Inc.*, 528 F.3d 871, 883 (Fed. Cir. 2008).

"A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—'when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome.'" *Already, LLC v. Nike, Inc.*, 133 S. Ct. 721, 726 (2013) (quoting *Murphy v. Hunt*, 455 U.S. 478, 481 (1982) (per curiam)) (some internal quotation marks omitted). Although a patentee's grant of a covenant not to sue a potential infringer can sometimes deprive a court of subject matter jurisdiction, *see Arris Grp., Inc. v. British Telecomm. PLC*, 639 F.3d 1368, 1380 (Fed. Cir. 2011), the patentee "bears the formidable burden of showing" "that it 'could not reasonably be expected' to resume its enforcement efforts

against" the covenanted, accused infringer, *Already*, 133 S. Ct. at 727 (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000)). In this context, that requires ArcelorMittal to show that it actually granted a covenant not to sue to Defendants, and that the covenant enforceably extinguished any real controversy between the parties related to infringement of the RE'153 patent.

Taking into account "all the circumstances," we find on the particular, unusual facts of this case that ArcelorMittal did not moot its controversy with Defendants over the RE'153 patent. Although this case has a convoluted history, the reason that the court retained jurisdiction is quite simple: At no time before the court entered summary judgment did ArcelorMittal *unconditionally* assure Defendants and their customers that it would never assert RE'153 claims 24 and 25 against them.

ArcelorMittal certainly had ample opportunity to provide the unconditional assurances required to defeat jurisdiction. It did not provide a covenant (1) when the RE'153 patent issued in April 2013; (2) in response to Defendants' June 2013 summary judgment brief explaining its view that claims 24–25 were asserted; or (3) in May 2015, after our second remand, which was to allow ArcelorMittal to continue its assertion of claims 24 and 25 against Defendants for their pre- and post- RE'153 issuance conduct.

ArcelorMittal's first indication that it might grant a covenant not to sue was in its September 4, 2015 opening brief in support of its motion to dismiss for lack of jurisdiction. ArcelorMittal maintained that RE'153 claims 24 and 25 were not part of the case on remand, but that even if they were, it was "prepared to grant a covenant against suit to Defendants for all claims of the [RE'153] patent in order to resolve any remaining issue." J.A. 4956; *see, e.g.*, J.A. 4950. ArcelorMittal's October 23 reply supporting its

motion to dismiss attached an *unexecuted* covenant as an exhibit. *See* J.A. 5103, 5107–08. Neither of these statements was an unconditional assurance that Defendants could rely upon as an enforceable covenant not to sue.

Finally, the letter and executed covenant ArcelorMittal filed with the court on November 18, 2015, taken together, were also qualified. ArcelorMittal tendered the covenant "conditioned on resolution of its motion to amend (D.I. 31) in the 685 case." J.A. 5218. Notably, ArcelorMittal expressed that it expected that further action—i.e., unconditional delivery—would have to be taken in order to make the covenant effective. *See id.* ("Consequently, Arcelor stands ready to deliver the covenant unconditionally upon resolution of that motion."). The district court, well within its discretion in managing its docket, resolved the 050 case summary judgment motion without having first resolved the motion to amend in the 685 case. Accordingly, the letter's condition remained unsatisfied, and no unconditional covenant was ever unconditionally delivered to Defendants before the court resolved the merits of the validity of claims 24 and 25 of the RE'153 patent.[1]

This outcome results from events that were entirely within ArcelorMittal's control. As reflected above, ArcelorMittal could have, at any point before December 4, 2015, delivered an unconditional, executed covenant not

---

[1]   We note that the district court issued one order that resolved the 050 case motion for summary judgment and granted the 685 case motion to amend. We need not resolve the metaphysical question of whether one decision came before the other, because as ArcelorMittal's letter made clear, it intended that it would separately deliver an executed covenant to Defendants *after* the 685 case motion to amend was resolved. This never happened.

to sue that would have mooted the dispute between the parties over the remaining claims of the RE'153 patent. Instead, as ArcelorMittal explained at the October 27 hearing and in its November 18 letter, it designed its actions specifically to maintain jurisdiction in the 685 case—a case which also would have been moot had ArcelorMittal tendered Defendants an effective covenant not to assert the RE'153 patent.  J.A. 5251 ("[I]f the Court says there's no jurisdiction on '153, that is the only patent that's in the [685] case right now, so if we were to sign a covenant against suit . . ., it would get rid of the [685] case."); J.A. 5218 ("Arcelor tends the covenant conditioned on resolution of its motion to amend (D.I. 31) in the 685 case.  As explained at the hearing, this condition is necessary to avoid mooting the 685 case and thereby divesting the Court of jurisdiction.").  In this fact-specific context, we must give effect to ArcelorMittal's express intent to make *conditional* delivery of an unconditional covenant mean something different than *unconditional* delivery of an unconditional covenant.[2]  The conditional nature of the

---

[2]    This is true as an application of the *MedImmune* "all-the-circumstances" approach and in consideration of contract law principles—both of which permit us to look outside the terms of the covenant itself.  *See MedImmune*, 549 U.S. at 127; *Linear Tech. Corp. v. Micrel, Inc.*, 275 F.3d 1040, 1050 (Fed. Cir. 2001) (holding that certain communications were not offers because they did "not indicate [the party's] intent to be bound, as required for a valid offer"); *Leeds v. First Allied Conn. Corp.,* 521 A.2d 1095, 1097 (Del. Ch. 1986) ("It is elementary that determination of the question whether a contract has been formed essentially turns upon a determination whether the parties to an alleged contract intended to bind themselves contractually.  A court determining if such intention has been manifested . . . determines this question of

covenant's delivery here differentiates this case from others where we have found jurisdiction defeated by less than a fully executed covenant not to sue. *See, e.g.*, *Organic Seed Growers & Trade Ass'n v. Monsanto Co.*, 718 F.3d 1350, 1358 (Fed. Cir. 2013) (finding that a party's "representations *unequivocally* disclaim[ing] any intent to sue appellant[s]" were, as a matter of judicial estoppel, sufficient to bind the representing party (emphasis added)).

Therefore, taking into account not solely the covenant's terms but also the circumstances of its delivery, we find no error in the district court's retention of subject matter jurisdiction.

## III

We address ArcelorMittal's other arguments briefly. First, we conclude that the district court correctly implemented our mandate by limiting its analysis to non-infringement and commercial success of RE'153 claims 24 and 25. In *ArcelorMittal II*, we "remand[ed] for further proceedings consistent with th[e] opinion and our mandate in *ArcelorMittal I*." 786 F.3d at 892. Thus, we incorporated *ArcelorMittal I*'s limited remand for consid-

---

fact from the overt acts and statements of the parties."); *Neenan v. United States*, 112 Fed. Cl. 325, 329 (2013), *aff'd*, 570 F. App'x 937 (Fed. Cir. 2014) ("An offer does not exist unless the offeror manifests an intent to be bound."); Restatement (Second) of Contracts § 26 ("A manifestation of willingness to enter into a bargain is not an offer if the person to whom it is addressed knows or has reason to know that the person making it does not intend to conclude a bargain until he has made a further manifestation of assent."); *see also* Restatement (Second) of Contracts §§ 19, 24, 103, 217.

eration of commercial success and non-infringement. ArcelorMittal argues that the reissuance of the '805 patent as the RE'153 patent required the district court to assess the obviousness of the RE'153 claims anew. But we previously held that the reissuance does not alone constitute new evidence excusing adherence to the mandate. *Id.* at 889. Moreover, the reissuance preceded the *ArcelorMittal II* mandate, and thus cannot be an intervening development. Therefore, the district court correctly considered RE'153 claims 24 and 25 under the limited proceedings that the *ArcelorMittal I* mandate required.

Finally, the district court acted within its discretion when it refused ArcelorMittal's Rule 56(d) request for new discovery on the commercial success of RE'153 claims 24 and 25. *See Baron Servs., Inc. v. Media Weather Innovations LLC*, 717 F.3d 907, 912 n.6 (Fed. Cir. 2013); *Murphy v. Millennium Radio Grp., LLC*, 650 F.3d 295, 310 (3d Cir. 2011). The district court found significant that ArcelorMittal did not explain how it could demonstrate a nexus between any commercial success evidence and the purported invention of RE'153 claims 24 and 25. We find no error in the district court's reasoning.

## IV

Because the district court possessed jurisdiction and correctly entered summary judgment, we affirm.

**AFFIRMED**

# United States Court of Appeals
# for the Federal Circuit

_____

**ARCELORMITTAL, ARCELORMITTAL ATLANTIQUE ET LORRAINE,**
*Plaintiffs-Appellants*

**v.**

**AK STEEL CORPORATION, SEVERSTAL DEARBORN, INC., WHEELING-NISSHIN INC.,**
*Defendants-Appellees*

_____

2016-1357

_____

Appeal from the United States District Court for the District of Delaware in No. 1:10-cv-00050-SLR, Judge Sue L. Robinson.

_____

WALLACH, *Circuit Judge*, dissenting.

"If a dispute is not a proper case or controversy" under Article III of the Constitution, we "have no business deciding it." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006). Indeed, "[n]o principle is more fundamental to the judiciary's proper role in our system of government." *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 37 (1976); *see Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 471 (1982) (describing the case or controversy check as a "bedrock requirement"). In the absence of a case or controversy, "we must put aside the natural urge to

proceed directly to the merits" of an action "and to settle it for the sake of convenience and efficiency." *Raines v. Byrd*, 521 U.S. 811, 820 (1997) (internal quotation marks omitted); *see Heine v. Bd. of Levee Comm'rs*, 86 U.S. 655, 658 (1873) ("[T]he hardship of the case, and the failure of the mode of procedure established by law, is not sufficient to justify a court of equity to depart from . . . precedent and . . . administer[] . . . justice at the expense of well-settled principles.").

The instant dispute returns to the court for a third time from the U.S. District Court for the District of Delaware ("District Court"). In its most recent decision, the District Court denied a motion to dismiss filed by Appellants ArcelorMittal and ArcelorMittal Atlantique et Lorraine (together, "Appellants") and, instead, granted motions for summary judgment of noninfringement and invalidity of claims 24–25 of U.S. Patent No. RE44,153 ("the RE153 patent") filed by Appellees AK Steel Corporation, Severstal Dearborn, Inc., and Wheeling-Nisshin Inc. (collectively, "Appellees"). *ArcelorMittal Fr. v. AK Steel Corp.* (*ArcelorMittal VI*), 147 F. Supp. 3d 232, 239 (D. Del. 2015). In denying Appellants' Motion to Dismiss, the District Court concluded that Appellants' covenant not to sue Appellees and their customers for infringement of the RE153 patent ("the Covenant") did not moot the dispute between the parties. *Id.* at 239 & n.17; *see* J.A. 5220–21 (Covenant). Because the Covenant moots the dispute between the parties and the majority concludes otherwise, I respectfully dissent.[1]

## I. Background

The present appeal follows from (1) the District Court's opinion construing various claims of U.S. Patent

---

[1]    I take no position on the majority's resolution of the merits. *See* Maj. Op. 5–6, 11–12.

No. 6,296,805 ("the '805 patent"), *see ArcelorMittal Fr. v. AK Steel Corp.* (*ArcelorMittal I*), 755 F. Supp. 2d 542, 546–51 (D. Del. 2010); (2) the District Court's opinion upholding the jury's verdicts that the subject claims of the '805 patent were not infringed under the doctrine of equivalents and were invalid as anticipated by the prior art or would have been obvious over the prior art, *see ArcelorMittal Fr. v. AK Steel Corp.* (*ArcelorMittal II*), 811 F. Supp. 2d 960, 965–73 (D. Del. 2011); (3) our opinion affirming-in-part on claim construction, reversing-in-part on claim construction and reversing on anticipation, and vacating and remanding for a new trial on literal infringement and obviousness, *see ArcelorMittal Fr. v. AK Steel Corp.* (*ArcelorMittal III*), 700 F.3d 1314, 1319–26 (Fed. Cir. 2012); (4) the District Court's opinion on remand invalidating claims 1–25 of the RE153 patent,[2] *see ArcelorMittal Fr. v. AK Steel Corp.* (*ArcelorMittal IV*), 989 F. Supp. 2d 364, 368–72 (D. Del. 2013); and (5) our decision affirming the District Court's invalidity determination as to claims 1–23 of the RE153 patent and reversing as to claims 24–25, *see ArcelorMittal Fr. v. AK Steel Corp.* (*ArcelorMittal V*), 786 F.3d 885, 888–92 (Fed. Cir. 2015).

After our latest remand to the District Court, Appellants moved to dismiss the action because, in their view, the District Court had invalidated all of the asserted claims of the RE153 patent (i.e., claims 1–2, 5, 7, and 16). J.A. 4943, 4947–59. Appellees responded by filing motions for summary judgment of invalidity and noninfringement of claims 24–25 of the RE153 patent. J.A. 4960, 4974–83, 4986, 4991–5010. Appellants subsequent-

---

[2]  The RE153 patent issued after the U.S. Patent and Trademark Office ("USPTO") granted Appellants' application to reissue the '805 patent as the RE153 patent.

ly filed the Covenant with the District Court, which states
that Appellants

> hereby *irrevocably* covenant not to sue [Appel-
> lees] . . . , and the customers of [Appellees] . . . ,
> under [the RE153 patent] . . . for *any use* of the
> RE153 [p]atent and *all actions* in connection with
> manufacture and sale of aluminum coated, boron-
> containing steel sheet products in the United
> States, including without limitation, making, hav-
> ing made, using, having used, selling, having sold,
> offering for sale, having offered for sale and im-
> porting, or having imported, aluminum coated,
> boron-containing steel sheet products.  To be
> clear, this covenant not to sue is limited to the
> RE153 [p]atent and shall not apply with respect to
> any patent related to the RE153 [p]atent, includ-
> ing U.S. Reissued Patent No. RE44,940 [("the
> RE940 patent")].[3]

J.A. 5220–21 (emphases added).  In the cover letter ac-
companying the Covenant, Appellants explained that they
filed the "executed [C]ovenant" with the District Court
"conditioned on [the] resolution of [their] motion to amend
[the complaint] in" a separate case ("the 685 case") to
assert the RE940 patent against Appellees and that "this
condition is necessary to avoid mooting the 685 case and
thereby divesting the [District] Court of jurisdiction."  J.A.
5218.  Appellants stated further that they "stand[] ready
to deliver the [C]ovenant unconditionally upon resolution
of that motion."  J.A. 5218.

---

[3]    Between *ArcelorMittal IV* and *ArcelorMittal V*,
the USPTO granted Appellants' continuation of the
application to reissue the '805 patent as the RE940 pa-
tent.

The District Court ultimately denied Appellants' Motion to Dismiss and granted Appellees' summary judgment motions. *ArcelorMittal VI*, 147 F. Supp. 3d at 239. Regarding the Covenant, the District Court observed that (1) Appellants "could have avoided the entry of [summary] judgment" had they "simply filed the [C]ovenant instead of making it conditional," *id.* at 239 n.17, and (2) the entry of summary judgment "moot[ed]" the Covenant, *id.* at 239.

## II. The Covenant Moots the Action

The threshold issue before us concerns the scope and effect of the Covenant. Because I conclude that the Covenant moots the dispute before us, I add to the applicable standards articulated by the majority and provide reasons for my disagreement.

### A. Choice of Law and Standard of Review

"[Q]uestions of the district court's jurisdiction" over a dispute concerning patent infringement and validity "are always determined under Federal Circuit law." *Schreiber Foods, Inc. v. Beatrice Cheese, Inc.*, 402 F.3d 1198, 1202 (Fed. Cir. 2005) (addressing, inter alia, mootness in an appeal concerning patent infringement and validity). Our law applies "because the jurisdictional issue is intimately involved with the substance of the patent laws," *Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1328 (Fed. Cir. 2008) (internal quotation marks and citation omitted), and "the development of the [substance of the] patent law[s] . . . falls within the exclusive subject matter responsibility of this court," *Mars Inc. v. Kabushiki–Kaisha Nippon Conlux*, 24 F.3d 1368, 1371 (Fed. Cir. 1994) (internal quotation marks and citation omitted). We review the denial "of a motion to dismiss for lack of subject matter jurisdiction de novo" and "factual findings underlying the jurisdiction determination for clear error." *Microsoft Corp. v. GeoTag, Inc.*, 817 F.3d 1305, 1311 (Fed. Cir. 2016) (internal quotation marks and citation omitted).

B. No Substantial Controversy of Sufficient Immediacy
and Reality Remained for the District Court to Resolve

Appellants argue that the District Court erred by failing to dismiss the action because the Covenant "unconditional[ly]" eliminated "any current or future case or controversy between the parties" as to the RE153 patent and Appellees otherwise failed to demonstrate the existence of a substantial controversy of sufficient immediacy. Appellants' Br. 30, 30–31 (internal quotation marks and citation omitted). I agree.

1. Legal Framework

The Constitution delegates certain powers across the three branches of the Federal Government and places limits on those powers. *See INS v. Chadha*, 462 U.S. 919, 951 (1983) (The Constitution "divide[s] the delegated powers of the . . . federal government into three defined categories, legislative, executive[,] and judicial, to assure . . . that each Branch of government . . . confine[s] itself to its assigned responsibility."). Article III of the Constitution discusses the powers granted to the Judicial Branch and, inter alia, "confines the judicial power of federal courts to deciding actual 'Cases' or 'Controversies.'" *Hollingsworth v. Perry*, 133 S. Ct. 2652, 2661 (2013) (quoting U.S. Const. art. III, § 2). "To qualify as a case fit for federal-court adjudication, an actual [case or] controversy must be extant at all stages of review, not merely at the time the complaint is filed." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997) (internal quotation marks and citation omitted).

The Supreme Court has provided for the application of a particular test to determine whether a claim for declaratory judgment, like Appellees' noninfringement and invalidity counterclaims, presents a case or controversy sufficient for Article III purposes. A declaratory judgment claim must pertain to "a substantial controversy, between [the] parties having adverse legal interests, of

sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (internal quotation marks, citation, and footnote omitted). The "party seeking a declaratory judgment has the burden of establishing" that such a controversy exists. *Cardinal Chem. Co. v. Morton Int'l, Inc.*, 508 U.S. 83, 95 (1993) (citation and footnote omitted).

Because "an intervening circumstance [may] deprive[] [a party] of a personal stake in the outcome of the lawsuit[] at any point during litigation," *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 669 (2016) (internal quotation marks and citation omitted), the mootness doctrine ensures that federal courts operate within their constitutional limits. "A case becomes moot—and therefore no longer a Case or Controversy for purposes of Article III— when the issues presented are no longer live or the parties lack a legally recognizable interest in the outcome." *Already, LLC v. Nike, Inc.*, 133 S. Ct. 721, 726 (2013) (internal quotation marks and citation omitted). In other words, "[a] case becomes moot . . . only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Campbell-Ewald*, 136 S. Ct. at 669 (internal quotation marks and citation omitted). If "the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot." *Id.* (internal quotation marks and citation omitted).

### 2. The Mootness Doctrine Applies Here

The Covenant moots the instant action because it leaves no live controversy for judicial resolution. To determine the breadth of a covenant, we look to its terms. *See Already*, 133 S. Ct. at 727–28 ("[W]e begin our analysis with the terms of the covenant."). The Covenant "irrevocably" prohibits Appellants from suing Appellees "and the[ir] customers" for (1) "any use" of the RE153 patent and (2) "*all actions* in connection with [the] manu-

facture and sale" of products based on the RE153 patent. J.A. 5220–21 (emphasis added). The Covenant applies to all actions and products based on the RE153 patent, regardless of the timing of those actions and products. *See* J.A. 5220–21 (including present progressive and present perfect tenses of "make," "have," "use," "sell," and "import"); *see also* Oral Argument at 4:35–5:17, http://oral arguments.cafc.uscourts.gov/default.aspx?fl=2016-1357.mp3 (confirming that the Covenant applies to future actions based on the RE153 patent). Contrary to the District Court's conclusion and Appellees' arguments, *see ArcelorMittal VI*, 147 F. Supp. 3d at 236, 239 n.17; Appellees' Br. 46–50 (arguing that the Covenant is conditional), the Covenant does not require the satisfaction of a condition precedent to take effect, *see* J.A. 5220–21. The appropriate representatives signed and dated the Covenant before Appellants submitted it to the District Court. J.A. 5221–22. Thus, the Covenant's terms extinguished any substantial controversy of sufficient immediacy between the parties concerning the RE153 patent, the only patent at issue in the instant action. *See MedImmune*, 549 U.S. at 127; *see also Already*, 133 S. Ct. at 732 ("Already's only legally cognizable injury—the fact that Nike took steps to enforce its trademark—is now gone," thus mooting the action.). And without a live issue to resolve as to the RE153 patent, the District Court could not grant any effectual relief to Appellees. *See Campbell-Ewald*, 136 S. Ct. at 669.

The majority does not dispute that under Supreme Court precedent our analysis must begin with the Covenant's terms. *See* Maj. Op. 6–11. Nevertheless, instead of beginning its analysis with those terms, the majority weighs the totality of the circumstances. *See id.* The majority states that governing law permits it to conduct a review of the totality of the circumstances, citing *Prasco, LLC v. Medicis Pharmaceutical Corp. Id.* at 7 (citing 537 F.3d 1329, 1336 (Fed. Cir. 2008)). *Prasco* states that,

although the totality of the circumstances "standard can be analyzed directly, the Supreme Court has also developed various *more specific but overlapping doctrines* rooted in the same Article III inquiry, *which must be met* for a controversy to be justiciable, including standing, ripeness, and *a lack of mootness*." 537 F.3d at 1336 (emphases added) (citations omitted). *Prasco* states further that, because "satisfying these doctrines represents *the absolute constitutional minimum* for a justiciable controversy, they can be a helpful guide in applying the all-the-circumstances test." *Id.* (emphasis added) (citation omitted). As a consequence, I do not follow the majority's approach and, instead, follow the more-specific mootness test articulated by the Supreme Court in *Already*. Indeed, the application here of the test articulated in *Already* (rather than the more general test articulated in *MedImmune* and adopted by the majority) is particularly appropriate because *Already*, like the appeal before us, involved a declaratory judgment claim. *See* 133 S. Ct. at 726.

In any event, I disagree with the majority's analysis of the totality of the circumstances. The majority first determines that "[a]t no time before the [District Court] entered summary judgment did [Appellants] *unconditionally* assure [Appellees] and their customers that it would never assert" claims 24–25 of the RE153 patent "against them." Maj. Op. 8. The majority proceeds to describe the series of events leading to Appellants' filing of the Covenant and to fault Appellants for not filing the Covenant sooner than they did. *See id.* at 8–9; *see also id.* at 9 ("This outcome results from events that were entirely within [Appellants'] control."). Neither the procedural history predating the filing of the Covenant nor our perceptions as to Appellants' timing can overcome the maxim that an action may become moot "at any point during litigation." *Campbell-Ewald*, 136 S. Ct. at 669 (internal quotation marks and citation omitted).

The majority next determines that "the [cover] letter and executed [C]ovenant . . . were also qualified." Maj. Op. 9. In reaching that conclusion, however, the majority does not assess the Covenant's terms. *See id.* Instead, the majority relies only upon the terms of the cover letter. *See id.* (citing J.A. 5218). An analysis of the Covenant's terms reveals that it contains no conditional terms, as the majority concedes. *See id.* at 4 (describing the Covenant as "facially unconditional"). Although Appellants conditionally *tendered* the Covenant to the District Court, the Covenant *itself* contained no conditions precedent and was fully executed. *See* J.A. 5218 (where, in a cover letter accompanying the "executed [C]ovenant," Appellants conditionally tendered the Covenant to the District Court), 5220–21 (where the executed Covenant contained no conditions).

In discerning a covenant's scope and effect, we rely on its terms, not evidence extrinsic to the stipulation such as terms in an accompanying cover letter. *See Already*, 133 S. Ct. at 728. Covenants not to sue may come in many different forms, though all have the same effect of mooting the litigation so long as their terms extinguish all remaining substantial controversies. *See, e.g., Organic Seed Growers & Trade Ass'n v. Monsanto Co.*, 718 F.3d 1350, 1357–61 (Fed. Cir. 2013) (equating a party's representations to a covenant not to sue and mooting the action, despite the party not reducing the statements to writing); *King Pharm., Inc. v. Eon Labs, Inc.*, 616 F.3d 1267, 1282–83 (Fed. Cir. 2010) (finding that "broad and unrestricted" written covenants not to sue "remove[d] any case or controversy that may have existed between the parties at one point"); *Dow Jones & Co. v. Ablaise Ltd.*, 606 F.3d 1338, 1345–49 (Fed. Cir. 2010) (finding that a proposed, rather than fully executed, covenant mooted the action); *Super Sack Mfg. Corp. v. Chase Packaging Corp.*, 57 F.3d 1054, 1058–60 (Fed. Cir. 1995) (finding that a covenant not to sue, which counsel signed and included in

motion papers, mooted the action because no "present activity" placed a party at risk of an infringement suit), *abrogated on other grounds by MedImmune*, 549 U.S. 118. When as here a covenant's terms are unambiguous, we may not interpret those terms using extrinsic evidence, such as a cover letter.[4] *See, e.g.*, *Coast Fed. Bank, FSB v. United States*, 323 F.3d 1035, 1040 (Fed. Cir. 2003) (en banc) (explaining that a party "cannot rely on extrinsic evidence" to interpret a phrase in a manner that "contradict[s] the plain language of" a contract); *see also* Restatement (Second) of Contracts § 285 (Am. Law Inst. 1981) (describing a covenant not to sue as a "contract").[5]

Even if the cover letter is relevant here, I find the majority's analysis of its terms unpersuasive. The majority regards as dispositive Appellants' statement in the cover letter that it had conditionally tendered the Covenant to the District Court. *See* Maj. Op. 4, 9. That position has two problems. First, the majority ignores the statement in the cover letter that the Covenant is "executed" and fails to explain why it has elevated one aspect of the cover letter over another. *See id.*; *see also* J.A. 5218 (explaining

---

[4]   The majority states that "contract law principles . . . permit us to look outside the terms of the [C]ovenant itself." Maj. Op. 10 n.2. Although under certain circumstances that is correct as a general matter, that position overlooks the precepts that "[c]ontract interpretation begins with the language of the written agreement," *NVT Techs., Inc. v. United States*, 370 F.3d 1153, 1159 (Fed. Cir. 2004) (citation omitted), and that extrinsic evidence cannot supplant a contract's unambiguous terms, *see City of Tacoma v. United States*, 31 F.3d 1130, 1134 (Fed. Cir. 1994).

[5]   I rely upon general rules of contract interpretation because the Covenant does not specify which law governs the interpretation of its terms. *See* J.A. 5218–22.

that Appellants "provide[d] a copy of the executed [C]ovenant with" the cover letter). We do not construe a covenant not to sue in a manner that fails "to harmonize and give reasonable meaning to all of its parts." *NVT Techs.*, 370 F.3d at 1159 (citation omitted). Second, and perhaps more importantly, Appellants' description in the cover letter of the manner in which they delivered the Covenant to the District Court (i.e., conditionally) does not inform the effect of the Covenant itself. Because the relevant terms of the cover letter and Covenant state that the Covenant was "executed" and applied to "all actions" related to the RE153 patent, J.A. 5218, 5221, it extinguished all live disputes between the parties as to that patent, irrespective of how Appellants ultimately decided to submit the Covenant. *See Organic Seed Growers*, 718 F.3d at 1357–61 (equating a party's representations to a covenant not to sue and mooting the action, despite the party not reducing the statements to writing).

In the end, the majority treats as dispositive Appellants' characterization of the manner in which they submitted the Covenant to the District Court. *See* Maj. Op. 9–11. That approach elevates a procedural gimmick over substance and permits a party to dictate whether a case has become moot. Precedent demands that we independently examine mootness, *cf. Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986) ("[E]very federal appellate court has a special obligation to satisfy itself . . . of its own jurisdiction, . . . even though the parties are prepared to concede it." (internal quotation marks and citation omitted)), and that we do so by assessing the relevant terms of a covenant not to sue, *see Already*, 133 S. Ct. at 727–28. For the reasons provided above, I conclude that the Covenant, even when read together with the cover letter, extinguished all live disputes between the parties.

### 3. The Voluntary Cessation Exception
### Does Not Apply Here

The analysis here cannot end by finding the action moot. An exception to the mootness doctrine—the voluntary cessation doctrine—addresses situations in which a federal court retains jurisdiction over a matter despite the apparent end of any live case or controversy. According to that doctrine, a party "cannot automatically moot a case simply by ending its unlawful conduct once sued" because, if permitted to do so, the party "could engage in unlawful conduct, stop when sued to have the case declared moot, then pick up where [it] left off, repeating this cycle until [it] achieves all [its] unlawful ends." *Already*, 133 S. Ct. at 727 (citation omitted). For that reason, "maneuvers designed to insulate" conduct from judicial review "must be viewed with a critical eye." *Knox v. Serv. Emps. Int'l Union, Local 1000*, 132 S. Ct. 2277, 2287 (2012). To demonstrate that its new position moots the action, Appellants "bear[] the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000) (citation omitted).

The scope of the Covenant meets the burden imposed by the voluntary cessation test. The Covenant is unconditional and irrevocable. J.A. 5220–21. It not only prohibits suit against Appellees for their activities and products—past, present, and future—based on the RE153 patent, it also protects their customers from suit for the same. J.A. 5221. Moreover, Appellants' stipulation means that judicial estoppel will prevent them from later changing their position on the matters covered by the Covenant. *See, e.g.*, *Organic Seed Growers*, 718 F.3d at 1358–59. Thus, Appellants could not reasonably be expected to sue Appellees anew for their activities and products related to the RE153 patent. *See, e.g.*, *Friends of the Earth*, 528 U.S. at 190.

Because Appellants demonstrate that the Covenant "encompasses all of [the] allegedly unlawful conduct" related to the RE153 patent, the burden shifts to Appellees "to indicate that [they] engage[] in or ha[ve] sufficiently concrete plans to engage in activities not covered by the [C]ovenant." *Already*, 133 S. Ct. at 728. Appellees have not met that burden. At no point before the District Court did Appellees allege that they had such plans, *see* J.A. 5047–69 (Appellees' Brief in Opposition to Appellants' Motion to Dismiss), 5246–55 (Hearing Transcript), and their brief on appeal does not include any such allegations, *see generally* Appellees' Br. That Appellants sued Appellees in the past for conduct related to the RE153 patent cannot provide the requisite evidence to overcome mootness. *See Already*, 133 S. Ct. at 730 (explaining that past litigation between the parties does not provide a live case or controversy sufficient to maintain the subject action). Without more, Appellees have failed to demonstrate that they harbor a reasonable expectation of additional litigation related to the RE153 patent. *See id.* at 729 ("Given the covenant's broad language, and given that Already has asserted no concrete plans to engage in conduct not covered by the covenant, we can conclude the case is moot because the challenged conduct cannot reasonably be expected to recur."); *cf. Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*, 556 F.3d 1294, 1298–1300 (Fed. Cir. 2009) (holding that a district court retained jurisdiction where a party provided affirmative evidence that it had concrete plans to engage in conduct not covered by a covenant not to sue).

### 4. Appellees' Remaining Arguments Fail

Appellees' remaining arguments do not persuade me to find that an actual case or controversy remained for the District Court to resolve. First, Appellees contend that we should not address jurisdiction because Appellants failed to raise certain arguments before the District Court, *see* Appellees' Br. 43–46, but federal courts must ensure that

an actual case or controversy endures throughout "all stages of review, not merely at the time the complaint is filed," *Arizonans*, 520 U.S. at 67 (internal quotation marks and citation omitted).

Second, Appellees contend that the District Court had resolved "the merits of [the] infringement claims" by the time Appellants proffered the Covenant, such that *Fort James Corp. v. Solo Cup Co.* barred the District Court from dismissing the action as moot. Appellees' Br. 53 (discussing 412 F.3d 1340 (Fed. Cir. 2005)). In *Fort James*, we held that a covenant not to sue executed after a jury rendered its verdict had no effect. *See* 412 F.3d at 1348. The subject action does not fall within the exception articulated in *Fort James* because the District Court did not enter its noninfringement summary judgment until *after* Appellants executed the Covenant. *Compare ArcelorMittal VI*, 147 F. Supp. 3d at 232 (where the District Court issued the opinion on December 4, 2015), *with* J.A. 5222 (where the final signatories signed the Covenant on November 12, 2015).

Third, Appellees argue that our holding in *ArcelorMittal III* bars enforcement of the Covenant. Appellees' Br. 52–53. Because *ArcelorMittal III* held that claim 1 of the '805 patent is not infringed under the doctrine of equivalents and that holding applies with equal force to claims 24–25 of the RE153 patent, Appellees aver that the Covenant cannot undo our prior decision. *See id.* In *ArcelorMittal III*, however, we declined to address whether Appellees infringed claim 1 of the '805 patent under the doctrine of equivalents. *See* 700 F.3d at 1318, 1322. We did not address the merits of that finding because Appellants did not challenge it, instead asserting that the issue should be remanded because of incorrect claim constructions. *See* Corrected Opening Brief of Plaintiffs-Appellants Arcelormittal France and Arcelormittal Atlantique et Lorraine, No. 2011-1638, 2012 WL 561484, at *44 (Fed. Cir. Jan. 9, 2012). Because we do not address

"issues not presented on appeal," *Pentax Corp. v. Robinson*, 135 F.3d 760, 762 (Fed. Cir. 1998) (citation omitted), our decision in *ArcelorMittal III* cannot be construed as having affirmed the jury's finding of noninfringement under the doctrine of equivalents, particularly when the jury's noninfringement finding rested on an incorrect construction of a relevant limitation, *see Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*, 381 F.3d 1371, 1383 (Fed. Cir. 2004) (stating that an erroneous instruction on claim interpretation that affects the jury's verdict on infringement is grounds for a new trial).

Finally, Appellees contend that the Covenant did not extinguish the controversy between the parties because "it did not protect [Appellees]' indirect customers from claims of infringement under the RE153 patent and did not protect [Appellees] against claims of infringement under the related RE940 patent." Appellees' Br. 56. However, Appellees have not identified any "indirect customers" against whom Appellants have asserted the RE153 patent or explained how such a suit would provide them with a reasonable expectation of further litigation based on the RE153 patent. *See id.* at 56–57. Moreover, Appellees do not explain how Appellants' suit against them based *on the RE940 patent* (i.e., the 685 case) provides them with a reasonable expectation of further litigation *on the RE153 patent*, particularly after Appellants executed the Covenant. *See* Appellees' Br. 57–58. Thus, Appellees' "speculation does not give rise to the sort of concrete and actual" controversy needed to comport with Article III of the Constitution. *Already*, 133 S. Ct. at 730 (internal quotation marks and citation omitted).

## III. Conclusion

Because the Covenant made it "absolutely clear" that Appellants would not pursue further any infringement claims against Appellees based on the RE153 patent, *Friends of the Earth*, 528 U.S. at 190, no case or contro-

versy remained for the District Court to resolve. Without a live "personal interest" to satisfy the Article III case or controversy requirement, *Arizonans*, 520 U.S. at 68 n.22 (internal quotation marks and citation omitted), the dispute before the District Court became moot. With the dispute before the District Court rendered moot, I would "set aside the decree below and . . . remand the cause with directions to dismiss." *Duke Power Co. v. Greenwood Cty.*, 299 U.S. 259, 267 (1936).